IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DELORES ROBINSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:14-CV-787-O-BL |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Delores Robinson ("Robinson") seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision, which denied her application for a period of disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, respectively. The United States District Judge referred the case to this Court pursuant to 28 U.S.C. § 636(c) and the parties have not consented to proceed before a United States Magistrate Judge.

After considering all the pleadings, briefs, and administrative record, this Court recommends that the Commissioner's decision be affirmed.

## I. BACKGROUND

Robinson claims that she became disabled on June 28, 2010, due to back pain, chest pain, right side weakness, insomnia, fatigue, depression, muscle spasms, and side effects of back surgery. (Tr. 197). Robinson protectively filed an application for DIB and SSI on December 29, 2011. (Tr. 16). Robinson's application was initially denied on April 10, 2012, and on reconsideration on June 1, 2012. (Tr. 60, 71). Subsequently, Robinson requested and received a

hearing before Administrative Law Judge Anne Pate ("ALJ") on April 24, 2013. (Tr. 28). On May 16, 2013, the ALJ issued an unfavorable decision finding that Robinson was not disabled and was capable of performing work existing in significant numbers in the national economy. (Tr. 16-22).

The ALJ followed the sequential five-step analysis to arrive at her decision.[1] First, the ALJ determined that Robinson had not engaged in substantial gainful activity since the alleged onset of her disability, June 28, 2010. (Tr. 17). Next, the ALJ determined that Robinson suffered from severe impairments, including: thoracic spondylosis, radiculitis, and depression. (Tr. 17). Third, the ALJ surmised that none of Robinson's severe impairments equaled the severity of the impairments in the listings.[2] (Tr. 17). Next, the ALJ determined that Robinson had the residual functional capacity ("RFC") for light work activity modified by her need to sit or stand at her option; occasionally climbing ramps and/or stairs; but never ladders, ropes, or scaffolds; occasionally balancing, stooping, kneeling, crouching, or crawling; understanding, remembering, and carrying out detailed, but not complex, job instructions; making decisions; attending and concentrating for extended periods; accepting instructions; and responding appropriately to changes in routine work settings. (Tr. 19). Finally, the ALJ concluded that Robinson could not return to her past relevant work. (Tr. 20). But, the ALJ found that Robinson could perform work that existed in significant numbers in the national economy. (Tr. 21). Finally, the ALJ determined that Robinson was not disabled within the meaning of the Social Security Act. (Tr. 21).

The Appeals Council denied review on July 11, 2014. (Tr. 4). The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v.*

---

[1] *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).
[2] *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.

*Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## II. LEGAL STANDARD

A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2012). To evaluate a disability claim, the Commissioner employs the following five-step sequential analysis to determine:

> 1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix I of the regulations, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Leggett v. Chater*, 67 F.3d 558, 564 n. 2 (5th Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

3

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

### III. ANALYSIS

Robinson raises three issues on appeal, including: (1) whether the ALJ's RFC is supported by substantial evidence, (2) whether the ALJ erred in evaluating Robinson's credibility, and (3) whether the ALJ posed an incomplete hypothetical question to the vocational expert ("VE").

**A. The ALJ did not err in evaluating the medical opinion evidence.**

Robinson contends that the ALJ selectively chose facts supporting her ultimate decision that Robinson was not disabled. Also, Robinson argues that the ALJ had a duty to consider the medical opinion of Dr. Mirro, a chiropractor, when determining Robinson's RFC. Robinson

concludes that these errors leave the ALJ's decision unsupported by substantial evidence. (Doc. 15, p. 15-18).

"The ALJ as factfinder has the sole responsibility for weighing evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). Determining the relative weight to be given to each piece of evidence is a function reserved for the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001); *Gray v. Astrue*, No. 1:09-CV-0101-BI, 2011 WL 856941, at *5-6 (N.D. Tex. 2011). Also, the ALJ has considerable discretion in assigning weight to medical opinions and may reject the opinion of a physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455-56. (5th Cir. 2000). The ALJ is "not required to accept any medical evidence *in toto*, rather, [the ALJ's] RFC determination is based upon the evidence as a whole." *Gray*, 2011 WL 856941, at *6.

1. **The ALJ did not selectively consider the medical evidence on record.**

Robinson, quoting *Johnson v. Colvin*, 2013 U.S. Dist. LEXIS 138147 (N.D. Tex. Sept. 26, 2013), contends that the ALJ is "not permitted to pick and choose the only evidence that supported her position." (Doc. 15, p. 16). Robinson claims that "the ALJ's discussion of the opinion evidence analyzed only the portions of the opinions which supported a conclusion of non-disability, and ignored portions of the same opinions that indicated that Plaintiff was more functionally limited." (Doc. 15, p. 16-17).

For example, Robinson points out that Dr. Hilborn, who conducted a consultative psychological evaluation, opined that Robinson's "social functioning appears limited" and that she is unable to complete tasks in a timely manner due to her emotional and physical symptoms. (Doc. 15, p. 17). Robinson alleges that the ALJ "failed to explain why she did not incorporate

5

social limitations in the RFC consistent with Dr. Hilborn's opinion . . . ." However, it is Robinson, not the ALJ, that is selectively highlighting the facts. Indeed, in assessing Robinson's functional capabilities, Dr. Hilborn ultimately opined:

> Mrs. Robinson seems to understand her application for disability. Her comprehension and ability to carry-out instructions is not impaired, though she is reportedly limited because of her medical problems. Her ability to interact effectively with peers and coworkers is affected by her condition, though she appears to get along well with others. Her executive functions seem intact. It is expected that she will be able to manage her finances in her own best interest despite her Axis I diagnosis.

(Tr. 444). Robinson would have the Court believe that Dr. Hilborn's note that her "social functioning appears limited" was his definitive assessment. That is erroneous. Dr. Hilborn did note Robinson's limitations, but concluded that her ability to comprehend and follow instructions was "not impaired." Contrary to Robinson's allegation, it seems clear that the ALJ considered Dr. Hilborn's entire evaluation and ultimately relied on his medical opinion regarding Robinson's capabilities.

Next, Robinson argues that the ALJ inexplicably disregarded the medical opinion of Dr. James Murphy, a state agency psychologist. Specifically, Robinson questions why the ALJ "determined [Robinson] is capable of responding to changes in the work setting as well as understanding, remembering, and carrying out detailed job instructions when this finding is plainly in conflict with Dr. Murphy's opinion." (Doc. 15, p. 17). The simplest answer might be that the ALJ's findings virtually mirror Dr. Murphy's medical opinion. While Dr. Murphy did note moderate limitations, his functional capacity assessment reads as follows:

> Claimant can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, & respond appropriately to changes in routine work setting.

(Tr. 469). Therefore, Robinson's assertion that the ALJ's decision is contradictory to Dr. Murphy's medical opinion finds no support in the record. Finally, Robinson claims that the ALJ failed to highlight evidence that refutes the doctors' statements that she is socially limited. As indicated, Dr. Hilborn's and Dr. Murphy's ultimate opinions conclude that she is not socially impaired, despite their noted limitations. As such, the Court finds support for the ALJ's RFC in both Dr. Hilborn's and Dr. Murphy's opinions.

2. **The ALJ did not err by failing to address and consider Dr. Mirro's report because he is considered an "other medical source."**

Robinson avers that remand is required because the ALJ "wholly failed to address and consider" the functional capacity assessment conducted by Dr. Nicholas Mirro, a chiropractor, which found her to be "significantly more limited than the ALJ assessed in the RFC." (Doc. 15, p. 18). Robinson's assertion is partly correct. The ALJ did fail to announce the weight given to Dr. Mirro's assessment, but that failure—absent a showing of prejudice—does not require remand. It is noteworthy that Dr. Mirro's report is contained within the records of Robinson's treating physician, Dr. Kocsis, and that the ALJ acknowledged reviewing Dr. Kocsis's records in her decision. (Tr. 377-397, 18).

The Social Security Administration classifies medical sources into two categories, "acceptable medical sources" and other medical sources. 20 C.F.R. §§ 404.1513, 416.913. "Only 'acceptable medical sources' can establish the existence of a medically determinable impairment, *give medical opinions*, and be considered treating sources whose medical opinions may be entitled to controlling weight." *Thibodeaux v. Astrue*, 324 F. App'x 440, 445 (5th Cir. 2009) (emphasis added); SSR 06-03p (2006). "Acceptable medical sources" include licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. *Id.* "Other medical sources" can include nurse practitioners, physicians'

assistants, chiropractors, audiologists, and therapists. *Id.* Hence, a chiropractor, not being an acceptable medical source, cannot render a medical opinion relevant to a Social Security disability appeal. *See Porter v. Barnhart*, 200 F. App'x 317, 319 (5th Cir. 2006) (finding that an ALJ is not required to rely on a chiropractor's evaluation in making an RFC finding because a chiropractor is not an acceptable medical source); *see also* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) . . . ."). Thus, despite Robinson's claims the ALJ was not required to afford any weight to Dr. Mirro's assessment. *See Thibodeaux*, 324 F. App'x at 445.

Nevertheless, the findings or other medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p. But, "[e]ven assuming, without deciding, that the absence of any reference to [Dr. Mirro's evaluation] in the ALJ's narrative discussion violated SSR 06–03p, [Robinson] must still show that the alleged error prejudiced her disability claim." *Wells-Defleice v. Colvin*, No. 3:13-CV-1279-BH, 2014 WL 1670102, at *10 (N.D. Tex. Apr. 25, 2014); *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012) ("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error."). Procedural errors will "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

Robinson attempts to demonstrate prejudice by arguing that the ALJ's failure to consider Dr. Mirro's report likely "impacted the vocational expert testimony regarding [Robinson's] ability to perform jobs." (Doc. 15, p. 18). Also, Robinson argues that she is "more limited than the ALJ's RFC determination, and these additional limitations would impact whether she is able to perform substantial gainful activity." (Doc. 17, p. 4). Essentially Robinson argues for the acceptance of Dr. Mirro's assessment, by an *other* medical source, over the contradicting medical opinions of Drs. Wright and Rosenstock, *acceptable* medical sources. As noted, Dr. Mirro found that Robinson's "[s]ymptoms and functional limitations are severe" and that "sitting/standing cannot be tolerated enough to allow clerical or other sedentary work." (Tr. 385). Also, Dr. Mirro recommended that Robinson work zero hours per week at a sedentary demand level with no lifting and the option to sit or stand as needed. (Tr. 387). On the contrary, both Drs. Wright and Rosenstock found that Robinson could sit or stand for about six hours in an eight-hour workday with normal breaks. (Tr. 460, 474). Further, Drs. Wright and Rosenstock found Robinson capable of occasionally lifting up to 20 pounds and frequently lifting 10 pounds. (Tr. 460, 474). The ALJ noted the findings of Drs. Wright and Rosenstock in her decision, concluding that Robinson could perform light work activity with limitations. (Tr. 18).

The ALJ, as fact-finder, "has the sole responsibility for weighing evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d at 790. Also, the ALJ has considerable discretion in assigning weight to medical opinions and may reject the opinion of a physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d at 455-56.

The Court finds that the ALJ did fail to explicitly acknowledge Dr. Mirro's report, but that the omission was harmless error. It is clear from the record that the ALJ chose to accept the

medical opinions of Drs. Wright and Rosenstock in arriving at her RFC and ultimate decision, and, beyond that, Robinson never demonstrated that she was prejudiced by the omission.

### B. The ALJ properly assessed Robinson's credibility.

Next, Robinson contends that the ALJ conducted a faulty credibility analysis in failing to supply the requisite details when determining that Robinson's "testimony concerning her level of pain and functional limitations was not credible or supported by the clinical medical evidence." (Tr. 20). When a claimant alleges symptoms such as pain or fatigue, the ALJ must conduct an objective/subjective, two-step analysis to evaluate the symptoms. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008); SSR 96-7p, 1996 SSR LEXIS 4. During the first, objective step, the ALJ must determine whether there is an underlying, medically-determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. *Salgado* at 458. When an impairment described in step one is established, then the ALJ proceeds through the second, subjective step to assess "the intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Id.* at 459. As part of the second step, the ALJ must make a finding regarding the credibility of the claimant's testimony regarding their symptoms. *Id.*

The Fifth Circuit explicitly rejected the requirement that an "ALJ must articulate specifically the evidence that supported [her] decision and discuss the evidence that was rejected." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Rather, the ALJ is simply bound to generally state her reasons for rejecting a claimant's complaints. *Id.* at 164. Both SSR 96-7p and 20 C.F.R § 416.929(c)(3) set out a seven-factor analysis for an ALJ to apply in order to assess the credibility of a claimant's subjective allegations of pain or fatigue. These factors include:

> (1) your daily activities; (2) the location, duration, frequency, and intensity of your pain or other symptoms; (3) precipitating and

> aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (5) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (6) any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3). Although the ALJ must articulate the basis for her credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005) (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001)). Finally, "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983) (per curiam). "Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d at 1024.

For the objective part of the two-step analysis, the ALJ determined that Robinson did indeed have severe, medically-determinable impairments, including severe thoracic spondylosis, radiculitis, and depression. (Tr. 20). As stated, the ALJ must then make, for the subjective part of the analysis, a determination as to the extent and credibility of the claimant's symptoms. In Robinson's case, the ALJ appeared to conduct, but not explicitly enumerate, her credibility analysis in the decision.

Even still, the ALJ's opinion contains evidence that she thoroughly addressed the seven factors enumerated in SSR 96-7p, although not in rigid format. The ALJ considered Robinson's

daily activities **(1)** and noted that she can bathe herself slowly and occasionally uses a walker to ambulate, but that she cannot wash dishes. (Tr. 18). Next, the ALJ assessed the location, duration, frequency, and intensity of Robinson's symptoms **(2)** by examining and listing, Dr. Ray's medical observations, Dr. Wright's medical observations, and Dr. Rosenstock's medical observations. (Tr. 18). The ALJ also evaluated any precipitating and aggravating factors **(3)** related to Robinson's impairments; specifically noting that Robinson continued smoking after her back surgery despite being advised that continued smoking could cause the bone fusion to be ineffective. (Tr. 17). The ALJ did not specifically list any medications that Robinson had taken to alleviate her pain or other symptoms **(4)**. However, the ALJ did identify treatment, other than medication, that Robinson underwent for relief of her pain or other symptoms **(5)**. Those treatments included intercostal nerve blocks at T6-7, T7-8, and T9-10, as well as use of a Transcutaneous Electrical Nerve Stimulation ("TENS") unit for pain relief. (Tr. 17). The ALJ failed to note, but was certainly aware of Robinson's testimony that she had utilized other measures to relieve her pain or other symptoms **(6)**, such as alternating sleeping positions. (Tr. 43). Finally, the ALJ clearly expressed knowledge of other factors concerning Robinson's functional limitations and restrictions due to pain or other symptoms **(7)**. This is evident in the ALJ's RFC assessment and findings. (Tr. 20-21).

As noted, the ALJ concluded that Robinson's "testimony concerning her level of pain and functional limitations was not credible or supported by the clinical medical evidence." (Tr. 20). And regardless of form, the Court finds that the ALJ conducted a proper credibility analysis by weighing both the objective and subjective evidence in Robinson's case. *See Prince*, 418 F. Supp. 2d at 871; *see also* 20 C.F.R. § 416.929(c)(3). Accordingly, the Court finds no error in the ALJ's credibility determination.

**C. The ALJ posed proper hypothetical questions to the VE at the hearing.**

Robinson argues that the ALJ's Step 5 determination is unsupported by substantial evidence due to an incomplete hypothetical question posed to the VE. Robinson, quoting *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994), argues that an ALJ's hypothetical question must incorporate all disabilities recognized in the RFC and that the claimant or her representative must be given a chance to correct any deficiencies in the question. Here, Robinson contends that the previously addressed issues rendered the RFC unsupported by substantial evidence and, thus, resulted in a faulty hypothetical question.

Hypothetical questions to a VE need only include the disabilities "supported by evidence and recognized by the ALJ." *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). A hypothetical question posed to a VE is not defective and can be relied upon if: (1) the hypothetical reasonably incorporates "all disabilities of the claimant recognized by the ALJ," and (2) "the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling*, 36 F.3d at 436; *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Glover v. Barnhart*, 81 Fed. App'x 513, 514-15 (5th Cir. 2003) ("Contrary to [claimant's] contentions, the hypothetical questions posed to the [VE] by the ALJ were not defective, as the questions reasonably incorporated all of the disabilities recognized by the ALJ. . . . Counsel was also given the opportunity to suggest to the VE additional disabilities, including [ones] not recognized by the ALJ's findings."). Both conditions must be met in order to avoid reversible error. *Bowling*, 36 F.3d at 436. Thus, "[o]nly where the testimony by the VE is based on a correct account of a claimant's qualifications and restrictions,

may the ALJ properly rely on the VE's testimony and conclusion." *Guillen v. Astrue*, 584 F. Supp. 2d 930, 940 (W.D. Tex. 2008). The assumptions made by the VE must be adequately supported by the evidence in the record. *Bowling*, 36 F.3d at 436; *Guillen*, 584 F. Supp. 2d at 940.

In this case, the ALJ posed hypothetical questions to the VE, Shelly Ike, that mirrored her RFC determination. (Tr. 49). Then, the ALJ added the limitation that Robinson be allowed to alternate sitting or standing at her election. (Tr. 50). Even still, the VE testified that Robinson could perform jobs existing in significant numbers in the national economy, such as small products assembler, small items inspector, and sorter. (Tr. 51-52). Robinson's counsel was given an opportunity to object to or correct any deficiencies in the hypothetical, but instead inquired about Robinson's ability to find work with numerous additional limitations. (Tr. 52-53). These limitations were added solely by Robinson's counsel and did not reflect the ALJ's RFC.

Accordingly, the Court finds that the hypotheticals posed to the VE accurately reflected the limitations recognized by the ALJ and supported by the record. *See Masterson*, 309 F.3d at 273. Further, Robinson's counsel was given the opportunity to correct any perceived deficiencies in the hypothetical. *See Bowling*, 36 F.3d at 436. Therefore, this issue does not require remand.

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must

file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated January 6, 2016.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**